**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIALECTIC DISTRIBUTION, LLC,<br>*Plaintiff*,<br>v.<br>212 PINECREST ROAD, LLC, *et al.*,<br>*Defendants*. | Civil Action No. 24-11388<br>**OPINION**<br>August 19, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon the Motion for Reconsideration filed by Plaintiff Dialectic Distribution, LLC ("Dialectic" or "Plaintiff") on February 18, 2026. (ECF 61, "Motion" or "Mot.") Plaintiff seeks reconsideration pursuant to Local Civil Rule 7.1(i) of this Court's Opinion and Order, (ECF Nos 57, 58), granting Defendants' Motion to Dismiss, (ECF 17.) Defendants 212 Pinecrest Road, LLC, 367 Lake Ave, LLC, 1633 Holbrook Street, LLC, 631 Irving Place, LLC, 80 Larkin Place, LLC, 432 Harnell Avenue, LLC, and 451 Harnell Ave, LLC, (collectively, "Defendants") filed a brief in opposition to Plaintiff's Motion on March 2, 2026. (ECF 62, "Opposition" or "Opp.") The Court has decided the Motion upon the submissions, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiff's Motion for Reconsideration is **DENIED**.

## I. FACTUAL BACKGROUND

The Court summarizes the factual background for this matter, which is fully articulated in this Court's Opinion dated February 4, 2026. (ECF 57, "Opinion" or "Op.") The controversy stems from Digital Direct & More, Inc.'s ("Digital Direct") purchase of $1.3 million in electronics from Plaintiff. (Op. at 2.) David Cameo ("Cameo"), Digital Direct's owner, did not tender payment to Plaintiff for the sale. (*Id.*) Instead of paying Plaintiff, Camero transferred his 50% interest in Digital Direct to his brother Ari Cameo ("Ari") and hundreds of thousands of dollars to his wife Shoshana Ostron ("Ostron"), disguised as salary increases. (ECF 17-6 ¶¶ 25, 37.) Ari and Ostron subsequently used the funds to purchase seven properties in and around Oakhurst, New Jersey through shell LLCs with the purpose of hiding the funds from Cameo's creditors. (*Id.* at 2; ECF 1-1, "Complaint" or "Compl." ¶ 15.)

On July 13, 2021, Cameo filed for bankruptcy in New York. (Op. at 2.) On July 11, 2022, David J. Doyaga, a trustee assigned to Cameo's bankruptcy petition, (hereinafter, "Trustee"), commenced an adversary proceeding against Ari and Ostron to recover the allegedly fraudulent conveyances. (Op. at 3; ECF 17-6, "Ex 4.") On September 26, 2023, the court approved a settlement resolving the Trustee's claims that required Ari and Ostron to pay the Trustee $460,000 (the "Trustee Settlement"). (*See* Op. at 3; ECF 17-7, "Settlement" or "Ex. 5"; ECF 17-8, "Ex. 6.") Plaintiff received a payout in the amount of $174,032.37 from the Trustee Settlement, the most received by any creditor except for Amazon.com. (ECF 17-9, "Distribution of Settlement Funds" or "Ex. 7" at 4.) On November 22, 2024, Plaintiff filed this suit in state court alleging Defendants violated the New Jersey Uniform Fraudulent Transfer Act, N.J. Stat. Ann. § 25:2-25. (*Id.*; Compl. ¶¶ 25-29.) Defendants removed this action to this Court on December 23, 2024. (*See* Compl.)

In its initial Opinion, this Court held that Plaintiff is precluded from filing suit against Defendants regarding the funds received by Ari and Ostron to purchase the properties. (*See generally* Op.) The Court reasoned that Plaintiff's interests were fully represented by the Trustee when adversary proceedings commenced against Ari and Ostron, and Plaintiff's claims are therefore precluded by the doctrine of *res judicata*. (*See id.* at 9-10.) The Court found Plaintiff to be in privity with the Trustee on the grounds that "Plaintiff, as a creditor of Cameo's bankruptcy estate, had a direct legal stake in the distribution of those assets[.]" (*Id.* at 7.) The Court ultimately granted Defendants' Motion to Dismiss. (*See id.*) Plaintiff filed a Motion for Reconsideration of the Court's Opinion on February 18, 2026. (Mot.) Defendants filed a brief in opposition to Plaintiff's Motion on February 19, 2026. (Opp.)

## II. LEGAL STANDARD

A party moving for reconsideration of an order of this Court must file its motion within fourteen days after the entry of that order and set "forth concisely the matter or controlling decisions which the party believes the . . . Judge has overlooked." L. Civ. R. 7.1(i). Motions for reconsideration are "extremely limited procedural vehicle(s)" that are to be granted "very sparingly." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013) (quotation marks omitted). A motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, at *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

A motion for reconsideration may only be granted if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of

law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (quotation marks and italics omitted). Such a motion is "not a vehicle for a litigant to raise new arguments." *CPS Medmanagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013); *see Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) (explaining a motion for reconsideration is not an opportunity to raise matters that could have been raised before the original decision was reached). "Mere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs. LLC*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)).

## III. ANALYSIS

In its Motion, Plaintiff does not present newly discovered evidence nor an intervening change in controlling law. (*See generally* Mot.) Instead, Plaintiff argues that this Court made a clear error of law when it determined that *res judicata* bars its claims against Defendants regarding the alleged fraudulent conveyance of funds to Ari and Ostron to purchase the properties. (*Id.* at 2.) Specifically, Plaintiff argues the Court's analysis was flawed in determining the existence of privity between the Trustee and Dialectic, (*id.* at 3), and in holding the two causes of action stem from the same circumstances. (*Id.* at 8.) The Court rejects Plaintiff's Motion for the following reasons.

### A. The Court's Privity Analysis Was Not Flawed

Plaintiff argues that it is not in privity with the Trustee for *res judicata* purposes because it had no "substantive legal relationship" with the Trustee. (*Id.* at 3.) Plaintiff argues a substantive legal relationship giving rise to nonparty claim preclusion requires "a contractual, fiduciary, or

property relationship—such that it is appropriate to bind one by another's litigation." (*Id.* at 4 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 894, n.8 (2008)).[1]

It is clear that Plaintiff has selectively referenced its preferred language from *Taylor.* The Supreme Court in *Taylor* specifically held that "[q]ualifying relationships include, *but are not limited to*, preceding and succeeding owners or property, bailee and bailor, and assignee and assignor." *Taylor*, 533 U.S. at 894. Furthermore, the Court in *Taylor* held that in some circumstances, "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Id.* (quoting *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996) (emphasis added)). The Court went on to hold that "representative suits with preclusive effect on nonparties include properly conducted class actions … and suits brought by *trustees*, guardians, and other fiduciaries." *Id.* (emphasis added). Therefore, the substantive legal relationships that may give rise to nonparty claim preclusion are not as limited by *Taylor* as Plaintiff makes them out to be, and may properly include relationships between a trustee and creditor.

Defendants correctly note in their opposition brief that contractual relationships do not exclusively give rise to privity. (Opp. at 8.) In *In re Montgomery Ward, LLC*, the Third Circuit held that a "'trustee is not simply the successor in interest to the Debtor: he represents the interests of all creditors of the Debtor's bankruptcy estate.'" 634 F.3d 732, 738 (3d Cir. 2011) (quoting *In re WorldCom, Inc.*, 401 B.R. 637, 646 (S.D.N.Y. 2009)); *see also Matter of Princeton-New York*

---

[1] To assert the applicability of *res judicata*, a party must show: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 172–73 (3d Cir. 2009) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). Here, Plaintiff challenges the whether the second two elements of *res judicata* are present in this action. (*See generally* Mot.)

*Investors, Inc.*, 219 B.R. 55, 59 (D.N.J. 1998) ("[W]hen a trustee initiates a cause of action pursuant to § 544(b), he is not acting as the debtor's representative but, rather, is standing in the shoes of an unsecured creditor.").[2] The holding in *Montgomery* is contrary to Plaintiff's assertions that a trustee solely represents the debtor's estate. (*See* Opp. at 5 ("The Trustee's sole client is the Estate of the Debtor – not any individual creditor.").) Here, Plaintiff's interests were adequately represented by the Trustee because Plaintiff was "part of the settlement process, did not object to the settlement despite having the opportunity to do so, and ultimately accepted a monetary distribution resulting from the Trustee's exercise of these powers[.]" (Opp. at 10.) Plaintiff ignores these details in its briefing, and instead attempts to relitigate arguments it made at the motion to dismiss stage of this litigation. (*See* ECF 20 at 10; Mot. at 4-5.)

Furthermore, the Court agrees with Defendants that the harm alleged by Plaintiff is derivative of the harm experienced by Cameo's creditors giving rise to the bankruptcy action. (Opp. at 9.) Trustees have the authority to form remedies on behalf of creditors whose harms are derived from a debtor's liability. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004). Here, Plaintiff's harm stems from Cameo's transfer of his funds to Ari and Ostron. (*See* Opp. at 13; ECF 17-6 ¶ 1.) The fact that Ari and Ostron subsequently used the funds to purchase real estate does not divorce Plaintiff's claims from the underlying fraudulent conveyance giving rise to the Trustee's action. Thus, there is no ambiguity regarding Plaintiff's privity with the Trustee. (*See* Mot. at 7.)

[2] The Trustee's action was predicated on 11 U.S.C. § 544, among other statutes. (ECF 17-6 at 3.)

**B. The Third Circuit's *Athlone* Factors Weigh in Favor of Applying *Res Judicata***

Plaintiff argues that its claims against Defendants involve different transactions from the conveyances giving rise to the Trustee's action. (Mot. at 8.) As Defendants note, Plaintiff made this argument in its motion to dismiss, (ECF 20 at 9-10), but now asks this Court to apply the factors in *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977 (3d Cir. 1984). (Opp. at 7.) The Court finds no clear error of law in its holding that *res judicata* applies in this instance, even when considering the *Athlone* factors.

The relevant factors for determining whether suits involve the same cause of action under *Athlone* are (1) whether the acts complained of and demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the necessary witnesses and documents are the same; and (4) whether the material facts alleged are the same. *See Athlone*, 746 F.2d at 984. Plaintiff argues the first factor weighs in its favor because the "acts complained of" in its Complaint are separate from the cause of action giving rise to the bankruptcy action. (*See* Mot. at 8-9.) Plaintiff argues its Complaint is based on "the alleged diversion and concealment of assets through the acquisition and transfer of real estate" while the bankruptcy action was based on Cameo's "transferred business ownership interests [and] paid inflated salaries." (*Id.* at 9.) The Court however agrees with Defendants that Plaintiff's harm stems ultimately from Cameo's transfers of funds, not independently from Ari or Ostron's purchase of the properties. (*See* Opp. at 11.) Cameo's purchase of electronics from Dialectic and Cameo's subsequent transfer of funds to Ari and Ostron to hide his available assets formulate the "underlying events giving rise to the various legal claims" asserted by the Trustee and Plaintiff here, which must be considered in the *res judicata* analysis. *See Blunt v. Lower Merion Sch. Distr.*, 767 F.3d 247, 277 (3d Cir. 2014). Therefore, the first *Athlone* factor weighs in favor of Defendants.

The Court also holds the second factor weighs in favor of Defendants. The Third Circuit applies a broad view when analyzing whether two causes of action stem from the same underlying events. A broad view is also used to decide whether the theories of recovery are the same. *See Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("We take a broad view of what constitutes the same cause of action [for *res judicata* purposes] … [r]ather than resting on the specific legal theory invoked, *res judicata* generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims …." (internal quotations omitted)). Here, the distinction Plaintiff makes between the Trustee's fraudulent conveyance action and its own is immaterial. Plaintiff claims that although the two actions use the "label" fraudulent conveyance, (Mot. at 9), they do not constitute the same cause of action because the Trustee focused on the "(a) transfer of an ownership interest in Digital Direct, and (b) improper salary distributions" and Plaintiff's claims focus on "a theory of recovery that Defendants diverted and laundered assets into real estate." (*Id.*) The Court agrees with Defendants that despite Plaintiff's "verbal gymnastics," "Plaintiff's theory of recovery is based entirely on the transfer of the same funds that the Trustee already sued for and settled"—the transfer of Cameo's funds which were owed to several creditors including Plaintiff. (Opp. at 11.) Accordingly, the Court finds that the second *Athlone* factor weighs in favor of applying *res judicata* in this action.

Next, Plaintiff argues that the third and fourth *Athlone* factors warrant reconsideration of the Court's Opinion. (Mot. at 10-11). With respect to the third factor, Plaintiff contends the witnesses and documents it would need to prove its claim are different from those used to support the Trustee's action. (*Id.*) With respect to the fourth factor, Plaintiff makes the same argument about the material facts between the two actions. (*Id.*) The Court is not convinced as to either point. Plaintiff cannot obtain relief based on the purchase of the properties by Ari and Ostron

without establishing the purchases were made to hide Cameo's assets. (Opp. at 12 ("At the end of the day, to prove the fraudulent transfer, Plaintiff would have to prove where the money came from, not where it went to.").) Plaintiff would not be able to exclusively rely on the records and witnesses he mentions in its Motion, which includes deeds, closing statements, mortgage records, LLC formation documents, and other real estate information. (Mot. at 10.) Plaintiff would also need to rely upon information used in the Trustee's action to show the funds used to purchase the properties came from Cameo, which at least include Digital Direct's ownership transfer documents and payroll records.[3] (*Id.*)

Furthermore, Plaintiff would need to rely upon the same facts considered by the Trustee. The pertinent facts include the transfer of funds from Cameo to Ari and Ostron in order to demonstrate how Cameo hid money owed to Plaintiff and other creditors. (Opp. at 12.) This Court held in its Opinion that Plaintiff's and the Trustee's actions derive from the same facts. (Op. at 7-8.) However, Plaintiff claims the Court did not meaningfully determine whether the material facts alleged are the same under *Athlone*. (Mot. at 11.) The Court holds that the material facts in both actions are the same, because Plaintiff could not state a claim for relief against Defendants without the context of the $1.3 million purchase of electronics and subsequent transfers to Ari and Ostron.

---

[3] By Plaintiff's own admission, its theory of liability against Defendants is that they, as shell LLCs, are transferees in receipt of funds fraudulently conveyed to them. (ECF 20 at 7.) Plaintiff also argues that the shell LLCs are alter egos of Ostron and Ari. (Compl. ¶ 35.) N.J. Stat. Ann. § 25:2-30(b) provides that a judgment may be entered against a transferee "to recover the lesser of the value of the *transferred* asset … or the amount necessary to satisfy the creditor's claim." *United States v. Patras*, 544 F. App'x 137, 145-46 (3d Cir. 2013). The analysis of whether a judgment is appropriate against a transferee necessarily requires the Court to examine the circumstances surrounding the transfer of the asset(s) in question to the transferee. *See id*. In this instance, the transfer of the assets to the Defendants arises out of Cameo's attempt to hide his funds from his creditors. (Compl. ¶ 13.)

Plaintiff's own Complaint makes this clear. In its count asserting a claim under the New Jersey Uniform Fraudulent Transfer Act, Plaintiff begins its argument by referring to Digital Direct's purchase of the electronics and the subsequent transfer of funds from Cameo to Ari and Ostron. (Compl ¶¶ 12-15.) The sale and transfer are the first facts alleged because they show how Plaintiff was harmed. The transfer of funds from Cameo to Ari and Ostron is the focus of Plaintiff's Complaint and the Trustee's action, making the two cases materially the same. *See Churchill v. Star Enterprises*, 183 F.3d 184, 195 (3d Cir. 1999) (holding claim preclusion under *Athlone* applies when "the thrusts of the two complaints remained practically identical" because they relied on the same key facts). Plaintiff's harm ultimately stems from Cameo's failure to tender payment for Plaintiff's goods and his effort to hide his assets, not by the creation of the LLCs or the purchase of the properties alone. Without establishing a harm, Plaintiff would have no standing to bring this suit. *See In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 222 (D.N.J. 2022) (holding a plaintiff must demonstrate they suffered "an invasion of a legally protected interest" to assert Article III standing). Therefore, the Court holds that the fourth *Athlone* factor applies and weighs in favor of claim preclusion.

**C. Dismissal of Plaintiff's Complaint with Prejudice Was Appropriate**

Plaintiff argues that even if this Court properly rejected its *res judicata* arguments, the Court erred by dismissing its Complaint without offering leave to amend. (Mot. at 13-14); *see Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) ("[T]he District Court should not have dismissed the plaintiffs' claims without either granting leave to amend or concluding that any amendment would be futile."); Fed. R. Civ. P. 15(a)(2).[4] Defendants argue that the Court did not

[4] The Court notes that it specifically stated in the February 4, 2026 Opinion that amendment would be futile because Plaintiff's claims are barred by *res judicata*. (*See* Op. at 11.)

err by dismissing Plaintiff's claims with prejudice because (1) "Plaintiff never moved to seek amendment and cannot do so now via a motion for reconsideration." (Opp. at 15); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[W]e implicitly rejected any argument that … district courts must *sua sponte* grant leave to amend before dismissing a complaint for failure to state a claim[.]"). Furthermore, Defendants argue that amendment would be futile since Plaintiff's claims are barred by *res judicata*. (Opp. at 15.) The Court holds that it was not clear error to dismiss the Complaint with prejudice because amendment would be futile.

An amended complaint is considered to be "futile" when amendment would "fail[] to state a claim upon which relief could be granted." *CBA Env't Serv., Inc. v. Toll Brothers Inc.*, 403 F. Supp. 403, 410 (D.N.J. 2019). This Court has held that when a complaint is dismissed on *res judicata* grounds, amendment would be futile. *See Great Western Min. & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 764 (D.N.J. 2012) (denying a motion for leave to amend on futility grounds when the amended complaint is barred by *res judicata*); *Ouaziz v. Murphy*, No. 23-2696, 2024 WL 397708, at *5 (D.N.J. Feb. 2, 2024), *aff'd*, 24-1867, 2024 WL 4927256 (3d Cir. Dec. 2, 2024) (dismissing claims barred by res judicata with prejudice). The Court therefore holds that Plaintiff's complaint was properly dismissed with prejudice because its claims are barred by *res judicata*, rendering amendment futile.

## IV. CONCLUSION[5]

For the reasons discussed above, the Court holds that Plaintiff has not established the Court made a clear error of law in holding the claims brought under the New Jersey Uniform Fraudulent

[5] Plaintiff's request for a stay is moot now that the Court has decided the present motion. (Mot. at 11.)

Transfer Act are precluded by *res judicata*. The Court also holds that dismissing Plaintiff's claims with prejudice was not a clear error of law. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Andre M. Espinosa, U.S.M.J.
Parties